UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JOE SNYDER** | **CIVIL ACTION** |
| **VERSUS** | **NO. 12-0097** |
| **L&M BOTRUC RENTAL, INC.** | **SECTION: "G"(5)** |

## ORDER AND REASONS

Before the Court is a Motion for Summary Judgment[1] filed by Defendant L&M Bo-Truc Rental, Inc. ("L&M"), wherein it seeks the dismissal of Plaintiff Joe Snyder's claims for compensatory damages, punitive damages, and attorney's fees for failure to pay maintenance and cure and for punitive damages under general maritime law for failure to pay maintenance and cure, gross negligence, and unseaworthiness of the vessel. After considering the pending motion, the memorandum in support, the opposition, the record, and the applicable law, the Court will grant the pending motion.

## I. Background

### A. *Factual Background*

The plaintiff, Joe Snyder ("Snyder") was a Jones Act seaman employed by the defendant, L&M, aboard the M/V BOTRUC 19 on November 26, 2011, when Snyder was involved in an accident resulting in serious injuries to his hand, wrist, knee, and other parts of his body.[2] Snyder alleges that he was rendered unfit for duty and presently remains unfit and incapable of

---

[1] Rec. Doc. 7.

[2] Rec. Doc. 1 ¶¶ III-V.

1

returning to work as a seaman as a result of the accident.[3] Snyder alleges that the "sole and proximate cause" of the accident was the negligence of L&M.

In addition, Snyder "alleges a claim for punitive damages against the defendant herein based upon General Maritime Law." Snyder contends that this 'claim related not only to any arbitrary and/or unreasonable failure of defendant to pay maintenance and cure but also for any gross negligence of the defendant, or unseaworthiness of the vessel as may be allowed under General Maritime Law."[4]

### B. *Procedural Background*

Snyder filed a complaint in this matter on January 13, 2012, to recover damages under the Jones Act and general maritime law.[5] On February 29, 2012, L&M answered the complaint. The instant Motion for Summary Judgment[6] was filed on July 10, 2012 by L&M, and Snyder timely filed a response.[7]

## II.  Parties' Arguments

### A. *L&M's Motion for Summary Judgment*

L&M claims that it paid Snyder his full wages for the time period of November 26, 2011 through January 4, 2012.[8] L&M also contends it has timely paid maintenance and cure to Snyder. L&M explains that Snyder received full wages through January 4, 2012. On January 9, 2012,

---

[3] *Id.* ¶ IV.

[4] *Id.* ¶ XI.

[5] Rec. Doc. 1 at ¶¶ VII-XI.

[6] Rec. Doc. 7.

[7] Rec. Doc. 10-1.

L&M received a letter from Snyder's physicians that indicated that he should be excused from work. In response, L&M paid Snyder maintenance and cure for the period of January 5, 2012 through January 18, 2012.[9]

Thereafter, L&M contends that despite its repeated requests to receive additional medical records regarding Snyder's medical condition, it did not receive any documentation of Snyder's status until it received a letter on April 5, 2012 from Snyder's attorney, enclosing additional medical records.[10] Based on those records, L&M paid Snyder $2,525.00 in maintenance and cure for the time period of January 20, 2012 through April 30, 2012.[11] On May 1, 2012, L&M made another maintenance and cure payment to Snyder of $775.00 to cover the time period of May 1, 2012 to May 31, 2012. On June 1, 2012, L&M paid Snyder $750.00 in maintenance and cure for time period of June 1, 2012 and June 30, 2012.[12]

L&M argues that Snyder is not entitled to punitive damages, compensatory damages, and attorney's fees on his maintenance and cure claim, because his claim that that L&M failed to pay maintenance and cure benefits is "erroneous[]."[13] According to L&M, an employer is entitled to investigate and require corroboration of a claim for maintenance and cure before making payments, but if the employer unreasonably refuses to pay maintenance and cure after conducting the investigation, or if the employer shows callousness and indifference or willful and wanton disregard for the seaman's injuries, then the employer is liable for compensatory

---

[8] Rec. Doc. 7-1 at p. 2.

[9] *Id.*

[10] *Id.*

[11] *Id.*

[12] *Id.* at p. 3.

[13] *Id.* at p. 4.

3

damages, punitive damages and attorney's fees.[14]  L&M contends that it acted in good faith and has paid for all known maintenance and cure incurred by Snyder.  Therefore, L&M argues that it is entitled to summary judgment on Snyder's claims for compensatory damages, punitive damages, and attorney's fees because there are no genuine issues of material fact in dispute regarding L&M's handling and investigation of the maintenance cure claim.

L&M also argues that it is entitled to summary judgment on Snyder's claims for punitive damages under general maritime law for failure to pay maintenance and cure, gross negligence, and the unseaworthiness of the vessel.[15]  L&M explains that Snyder, as a Jones Act seaman, cannot recover punitive damages, but only pecuniary damages. Relying on *Miles v. Apex Marine Corp.*[16] and *Anderson v. Texaco, Inc.*,[17] L&M argues that Jones Act seaman "cannot recover punitive damages by couching [their] claims in the judge-made maritime law of negligence and unseaworthiness."[18]  Therefore, L&M contends that it is also entitled to summary judgment in its favor on Snyder's "unseaworthiness and general maritime negligence punitive damage claims."[19]

### B. *Plaintiff's Opposition to the Motion for Summary Judgment*

In opposition to the pending motion, Snyder argues that his claim for maintenance and cure should not be dismissed, because he has an "ongoing" claim for maintenance and cure "until

---

[14] *Id.* at p. 5.

[15] *Id.* at p. 6.

[16] 498 U.S. 19 (1990).

[17] 797 F. Supp. 531 (E.D. La. 1992) (Feldman, J.).

[18] Rec. Doc. 7-1 at p. 7 (citing *Miles*, 498 U.S. 19; *Anderson*, 797 F. Supp. at 534-36 (E.D. La. 1992) (Feldman, J.)).

[19] *Id.* at p. 8.

such time as plaintiff has reached maximum medial [sic] improvement."[20] Snyder reasons that his claims for maintenance and cure cannot be dismissed until Snyder's treating physician unequivocally determines that he has reached maximum medical cure.[21] In addition, Snyder claims that "because defendant has to date only begrudgingly paid maintenance as demands were made by plaintiff's counsel, there remains a claim for damages arising from defendant's reluctance to pay timely."[22] Snyder further reasons that if his claim for punitive damages does not arise until L&M refuses to pay maintenance and cure, he should be permitted to maintain his claims until maximum medical improvement is reached in the interest of judicial economy," instead of being forced to file another lawsuit if L&M later refuses to pay.[23]

Snyder also opposes the motion to dismiss his claims for punitive damages under the general maritime law for gross negligence and unseaworthiness of the vessel. Snyder refutes L&M's contention that these damages are not permitted as a matter of law, claiming that *Atlantic Sounding Co. v. Townsend*[24] superseded the precedent upon which L&M relies, specifically *Miles*[25] and *Anderson*.[26] Snyder explains that "[i]n *In re Maryland Marine*, Judge Berrigan relied on the holding of *Townsend* to allow the question of non-pecuniary damages to be presented to the jury in a Jones Act case."[27] Ultimately, Snyder asserts that there is movement in the law regarding when a Jones Act seaman may maintain a punitive damages claim for

---

[20] Rec. Doc. 10 at p. 1.

[21] *Id.* at p. 3.

[22] *Id.* at p. 2.

[23] *Id.* at p. 4.

[24] 557 U.S. 404 (2009).

[25] 498 U.S. 19.

[26] 797 F. Supp. 531.

[27] Rec. Doc. 10 at p. 5 (internal citation omitted).

"intentional or willful misconduct."[28] Therefore, Snyder maintains that he should be permitted to present his claim of punitive damages under general maritime law for gross negligence or unseaworthiness to the jury.[29]

### III. Law and Analysis

#### A. *Standard on a Motion for Summary Judgment*

Summary judgment is appropriate when the pleadings, the discovery, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[30] When assessing whether a dispute as to any material fact exists, the court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[31] All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[32] If the record, as a whole, could not lead a rational trier of fact to find for the non-moving party, then no genuine issue of fact exists and the moving party is entitled to judgment as a matter of law.[33]

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its summary judgment burden merely by pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving

---

[28] *Id.*

[29] *Id.*

[30] Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[31] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008).

[32] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

[33] *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).

party's claim.[34] At that time, the burden shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue of fact exists.[35] The nonmoving party may not rest upon the pleadings, but must identify specific facts in the record and articulate the precise manner in which that evidence establishes a genuine issue for trial.[36]

## B. Applicable Law

### 1. Maintenance and Cure

Maintenance and cure is an old remedy under general maritime law that is implicit in the contractual relationship between the seaman and his employer and designed to assist in the recovery of a seaman upon injury or illness sustained while in the service of the ship.[37] When there are doubts or ambiguities regarding a seaman's right to receive maintenance and cure payments, "they are to be resolved in favor of the seaman."[38]

Upon receiving a demand for maintenance and cure, a shipowner is not required to begin payments immediately, but may undertake a reasonable investigation of the seaman's claim.[39] If the shipowner unreasonably rejects the claim after investigation, when in fact the seaman is due maintenance and cure, the owner becomes liable for maintenance and cure payments in addition to compensatory damages.[40] If, by failing to pay, the shipowner has not only been unreasonable

---

[34] *See Celotex*, 477 U.S. at 325.

[35] *See id.* at 324.

[36] *See, e.g., id.* at 325; *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998); *Little*, 37 F.3d at 1075; *Isquith ex rel. Isquith v. Middle South Utils., Inc.*, 847 F.2d 186, 198 (5th Cir. 1988), *cert. denied*, 488 U.S. 926 (1988).

[37] *Pelotto v. L & N Towing Co.*, 604 F.2d 396, 400 (5th Cir. 1979)

[38] *Vaughan v. Atkinson*, 369 U.S. 527, 532 (1962).

[39] *Morales v. Garijak, Inc.*, 829 F.2d 1355, 1358 (5th Cir. 1987), *abrogated on other grounds by Guevara v. Maritime Overseas Corp.*, 59 F.3d 1496 (5th Cir. 1995); *McWilliams v. Texaco, Inc.*, 781 F.2d 514, 518-20 (5th Cir. 1986).

[40] *Morales*, 829 F.2d at 1358.

but has also been "callous and recalcitrant, arbitrary and capricious, or willful, callous, and persistent,"[41] then the owner may also be liable for punitive damages and attorney's fees.[42] The failure to pay maintenance and cure due an injured seaman is reasonable if a diligent investigation indicates that the seaman's claim is not documented by the submission of medical reports or his claim is not legitimate.[43]

The entitlement to maintenance and cure ends when the seaman reaches the date of maximum possible cure, which is the point at which further treatment will probably not improve his condition.[44] The Fifth Circuit has held that "[a] determination to terminate a seaman's right to maintenance and cure must be unequivocal."[45] When there are conflicting diagnoses and prognoses from various physicians, there is a question of fact to be determined by the trier of fact as to a plaintiff's entitlement to maintenance and cure benefits and as to whether an employer's termination of maintenance and cure benefits was arbitrary or capricious.[46] Additionally, an award for future maintenance and cure is justified when supported by a physician's testimony.[47]

*2. Negligence and Unseaworthiness*

Recently, in *Townsend*, the United States Supreme Court held that punitive damages are available for the willful and wanton disregard of the maintenance and cure obligation,

---

[41] *Id.*

[42] *Id*; *see also Townsend*, 557 U.S. at 422.

[43] *McWilliams*, 781 F.2d at 518-20.

[44] *Morales*, 829 F.2d at 1359 (citing *Springborn v. American Commercial Barge Lines, Inc.,* 767 F.2d 89, 95 (5th Cir. 1985)). *See also Johnson v. Marlin Drilling Co.*, 893 F.2d 77, 79 (5th Cir. 1990).

[45] *Johnson*, 893 F.2d at 79.

[46] *Tullos v. Resource Drilling, Inc.,* 750 F.2d 380, 388 (5th Cir. 1985).

[47] *Lirette v. K&B Boat Rentals, Inc.*, 579 F.2d 968, 969 (5th Cir. 1969) (en banc).

notwithstanding the Jones Act's limitation on non-pecuniary damages.[48] The Supreme Court reasoned that the Jones Act created a "statutory cause of action for negligence, but it did not eliminate pre-existing remedies available to seamen for the separate common-law cause of action based on a seaman's right to maintenance and cure."[49] *Townsend* did not specifically address negligence or unseaworthiness claims. Indeed, the Supreme Court emphasized that "remedies for negligence, unseaworthiness, and maintenance and cure have different origins and may on occasion call for application of slightly different principles and procedures."[50] Therefore, the question remains unanswered of whether punitive damages are also available for other general maritime law claims, including a seaman's claims of gross negligence and unseaworthiness of the vessel.

*Townsend* has spurned many different interpretations of the earlier Supreme Court decision in *Miles*. According to the Supreme Court, the decision in *Miles* "grapples with the . . . question [of] whether general maritime law should provide a cause of action for wrongful death based on unseaworthiness."[51] *Miles* held that a general maritime action for wrongful death based on unseaworthiness exists, but, because Congress chose to limit the availability of non-pecuniary damages under the Jones Act and the Death On the High Seas Act, the availability of non-pecuniary damages for wrongful-death actions brought under general maritime law must likewise be limited.[52] In the wake of *Miles*, district court decisions have differed on the availability of punitive damages under general maritime law. Although *Townsend* clearly

---

[48] 557 U.S. at 415-16.

[49] *Id.*

[50] *Id.* at 423 (internal quotations omitted).

[51] *Id.* at 419.

[52] 498 U.S. at 37.

established the availability of punitive damages for maintenance and cure claims under general maritime law, it did not specifically address the availability of punitive damages for unseaworthiness or negligence claims. To the extent *Townsend* provided any guidance on punitive damages in other contexts, it must be inferred from the Supreme Court's observations that punitive damages have long been available at common law, that the common-law tradition of punitive damages extends to maritime law, and that unless evidence exists that the claim is to be excluded from this general admiralty rule (like the Jones Act, which explicitly limits damages) punitive damages are available.[53]

Some decisions from this District have interpreted *Miles* to allow for the possibility that punitive damages may be available under general maritime law for unseaworthiness or negligence.[54] In contrast, other decisions have emphasized the policy of uniformity of damages articulated in *Miles* in areas where Congress has enacted legislation, and declined to allow punitive damages claims for unseaworthiness or negligence to proceed.[55] It is evident that a serious split of authority exists on this issue, which has yet to be resolved by the Fifth Circuit or the Supreme Court. Nonetheless, this Court is persuaded by the reasoning articulated in

---

[53] *Townsend*, 557 U.S. at 414-15.

[54] *Logue v. Tidewater, Inc.,* No. 91-1109, 1992 WL 59409 (E.D. La. Mar. 17, 1992) (Wicker, J.) (refusing to extend *Miles* beyond claims for loss of society and consortium to bar Jones Act/general maritime law claim for punitive damages); *Hannon v. Waterman Steamship Corp.,* No. 80-1175, 1991 WL 278996 (E.D. La. Dec. 20, 1991) (Wynee, Mag. J.); *Davis v. Penrod Drilling Corp.,* No. 91-1458, 1991 WL 264541 (E.D. La. Dec. 4, 1991) (Heebe, J.).

[55] *See e.g.*, *Anderson*, 797 F. Supp. At 535-536; *In re Petition of Cleveland Tankers, Inc.*, 791 F. Supp. 679 (E.D. Mich. 1992) (*Miles* bars seaman's punitive damages claim under the general maritime law in personal injury setting because "the central tenet of *Miles* [is] that where Congress has legislated in an area of maritime law, case law-created remedies must be uniform with such legislation."); *Howard v. Atlantic Pacific Marine Corp.,* No. 89-3073, 1992 WL 55487 (E.D. La. Feb. 28, 1992) (Clement, J.) ("*Miles*'s policy of uniformity of damages of the Jones Act, DOHSA and the general maritime law precludes recovery of punitive damages for unseaworthiness or negligence."); *Rowan Companies v. Badeaux,* Nos. 90-0370, 90-0756, 1991 WL 175541 (E.D. La. Aug. 28, 1991) (Livaudais, J.); *Matter of Waterman S.S Corp.,* 780 F. Supp. 1093, 1096 (E.D. La.1992) (Sear, J.) (Because the Jones Act and DOHSA "restrict losses to pecuniary ones, judicially-created maritime law also should so restrict.").

*Anderson v. Texaco*,[56] that a seaman statutorily barred under the Jones Act from receiving punitive damage awards "cannot recover punitive damages by couching his claim in the judge-made law of negligence and unseaworthiness."[57] The doctrinal underpinnings of *Miles* support such a conclusion. Congress, by enacting the Jones Act, has restricted the availability of punitive damages for negligence and unseaworthiness claims for seamen.

## C. Analysis

### 1. Maintenance and Cure

On issues where Snyder would bear the burden of proof at trial, L&M may succeed on its motion for summary judgment by pointing to the absence of evidence in the record to support one of Snyder's claims. Here, L&M has supported its motion for summary judgment with documentation that it paid Snyder maintenance and cure from January 4, 2012 through June 30, 2012, covering a time period beyond when this motion was filed on June 7, 2012. Moreover, L&M states that it timely paid maintenance and cure, and that any delay in the payment of maintenance and cure was caused by Snyder's attorney's failure to respond to it repeated requests for medical records.[58] Snyder does not dispute any of this evidence. Moreover, Snyder does not point to any contrary evidence or argue that any previous delay in payment of maintenance and cure was unreasonable. Rather, Snyder merely claims that previous payments have been made "begrudgingly" and therefore requests that his punitive damages claims be

---

[56] 797 F. Supp. 531.

[57] *Id.* at 535.

[58] Rec. Doc. 7-1 at p. 2 (citing Ex. 2).

allowed to remain in the event that L&M later decides to improperly terminate maintenance and cure.

Because Snyder will have the burden of proof regarding his entitlement to maintenance and cure and the unreasonableness of L&M's refusal to pay at the trial of this matter, he also bears the burden of proof at the summary judgment stage of these proceedings. In order for Snyder to carry his burden to defeat summary judgment, Snyder must establish a genuine issue of material fact regarding L&M's refusal to pay maintenance and cure by submitting or referring to evidence in the record. In opposition, Snyder makes the conclusory allegation, without pointing to any evidence in the record, that as "defendant has to date only begrudgingly paid maintenance as demands were made by plaintiff's counsel, there remains a claim for damages arising from defendant's reluctance to pay timely."[59] Snyder also suggests, without any legal authority, that in any event he should be allowed to maintain his claim for maintenance and cure, and related claims for attorney's fees and punitive damages, because he has not reached maximum medical improvement and L&M might refuse to pay him maintenance and cure in the future. In effect, Snyder tacitly concedes that his claims for compensatory damages, punitive damages, and attorney's fees are presently not supported by the facts because he makes no allegation that L&M has not paid all maintenance and cure owed to date. It matters not that L&M may have only begrudgingly or reluctantly paid maintenance and cure, as long as it in fact paid.

Therefore, Snyder has not carried his burden of proof to defeat summary judgment. He has pointed to no evidence in the record establishing a genuine issue of material fact for trial that L&M failed to fulfill its obligation to pay maintenance and cure. Therefore, summary judgment

---

[59] Rec. Doc. 10 at p. 2.

is appropriate to dismiss Snyder's claims for compensatory damages, punitive damages, and attorney's fees for failure to pay maintenance and cure.

### 2. *Negligence and Unseaworthiness*

Snyder also claims punitive damages for "any gross negligence of [L&M], or unseaworthiness of the vessel as may be allowed under General Maritime Law,"[60] and he relies heavily upon the United States Supreme Court's holding in *Townsend*.[61] Snyder would have this Court read *Townsend* to allow punitive damages for all claims under general maritime law, including negligence and unseaworthiness. Moreover, Snyder contends that *Townsend* superseded *Miles* and *Anderson,* the cases relied upon by L&M to foreclose punitive damages under general maritime law.

As discussed above, *Townsend* did not hold that punitive damages are available to seaman for negligence and unseaworthiness. Instead, *Townsend* held that punitive damages may be available for refusal to pay maintenance and cure, because the Jones Act did not intend to limit the availability of those damages for maintenance and cure.[62] Moreover, Snyder is incorrect in his assertion that *Miles* was superseded by *Townsend.* Indeed, the Supreme Court reiterated in *Townsend* that "[t]he reasoning of *Miles* remains sound."[63]

The application of the principles discussed in *Miles* to this case persuades this Court to grant summary judgment in L&M's favor. It is undisputed that Snyder is a Jones Act seaman. Snyder would be precluded from recovering punitive damages on his negligence and

---

[60] Rec. Doc. 1 ¶ XI.

[61] 557 U.S. 404.

[62] *Id.* at 424.

[63] *Id.* at 420.

unseaworthiness claims under the Jones Act because of the statute's pecuniary limitation.[64] Therefore, the Court will dismiss Snyder's punitive damage claims for gross negligence and unseaworthiness under general maritime law.

### IV.  Conclusion

For the reasons stated above.

**IT IS HEREBY ORDERED** that L&M's Motion for Summary Judgment[65] is **GRANTED** and Snyder's claims for punitive damages, compensatory damages, and attorney's fees arising from L&M's alleged failure to pay maintenance and cure are **DISMISSED**.

**IT IS FURTHER ORDERED** that Snyder's claims for punitive damages under general maritime law for gross negligence and for unseaworthiness of the vessel are **DISMISSED**.

**NEW ORLEANS, LOUISIANA**, this __15th__ day of February, 2013.

*[signature]*
**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[64] Pecuniary damages are awards designed to restore "material loss which is susceptible of pecuniary valuation." *See Michigan Central R. Co. v. Vreeland*, 227 U.S. 59, 71 (1913).  Punitive damages do not compensate for a loss, but are imposed to punish and deter by virtue of the gravity of the offense.  *See Molozf v. United States*, 502 U.S. 301 (1992).

[65] Rec. Doc. 7.